[No. 38470.   En Banc.   June 23, 1966.]

*In the Matter of the Application for a Writ of Habeas Corpus of* JERRY DOUGLAS MEMPA, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*Jerry Douglas Mempa,* pro se.

*The Attorney General* and *Lee D. Rickabaugh,* for respondent.

FINLEY, J.—This matter involves a petition for a writ of habeas corpus. The salient facts are: Petitioner, Jerry

*Reported in 416 P.2d 104.

D. Mempa, was charged in the Superior Court for Spokane County with "joy-riding," as defined and prohibited by RCW 9.54.020. At his arraignment in that court, the petitioner was represented by court-appointed counsel, Willard J. Roe, then a prominent member of the Spokane Bar, and now a judge of the Spokane County Superior Court. Mempa, with the advice of counsel, entered a plea of guilty to the charge of "joy-riding." He was granted the privilege of probation status, and the imposition of the sentence was deferred pursuant to the provisions of RCW 9.95.200 and 9.95.210. Thereafter (approximately 2 months later), the Spokane County Prosecutor's Office moved to have Mempa's probation status revoked for violation of the terms and conditions under which it had been granted. At a hearing in the Spokane County Superior Court, the petitioner's probation was revoked. Sentence (the statutory maximum term of imprisonment of 10 years, subject, of course, to subsequent parole board action determining the actual period of institutional confinement or custody) was then imposed and, promptly thereafter, judgment, sentence, and an order of commitment were entered accordingly.

The basis of this petition for a writ of habeas corpus may be concisely described as follows: Jerry D. Mempa was not represented by counsel at the peremptory hearing in the Spokane Superior Court when (a) his probation status was revoked, (b) the deferral of sentence was vacated, and (c) its imposition took effect forthwith.[1] Thus, the problem presented to us for decision is whether probationer Mempa was entitled to counsel as a matter of constitutional right in relation to any one or all of the foregoing aspects of administration of the state probation system.

At this juncture some observations regarding the nature of probation—what it is and is not—may be helpful to an understanding of our decision herein denying Jerry D.

[1]Relative to a deferred sentence, RCW 9.95.220 provides:
If the judgment has not been pronounced, the court shall pronounce judgment after such revocation of probation and the defendant shall be delivered to the sheriff to be transported to the penitentiary or reformatory, in accordance with the sentence imposed.

Mempa's petition for a writ of habeas corpus. It should first be noted that probation is a very useful and flexible tool or technique of modern penal administration. In fact, few well-informed people would disagree respecting the desirability of the objectives of probation and its constructive potential as a modern penal device for the rehabilitation of criminal offenders. Probation permits special handling of carefully selected criminal offenders who have pleaded guilty, or have been convicted of committing an offense against society. Perhaps in one sense the significant characteristic of the probation device is that the person who is fortunate enough to qualify and to have been granted probation status is allowed to be at liberty in the community. However, the probationer's ostensible "liberty" is somewhat misleading in that he is actually under probation supervision. Thus, while the probationer is not confined to a penal institution, he remains in *"semi-custody."* The purpose or theory of such an arrangement is that probation status, with attendant supervision and its emphasis upon law-abiding, responsible conduct on the part of the probationer, can be most conducive to the rehabilitation of criminal offenders as useful members of society.

However, probation, or the acquisition of probation status, must be kept in proper perspective. It is not a matter of constitutional right. It is a matter of privilege or *grace,* authorized by the state legislature to be granted or initially implemented solely through an exercise of judicial discretion by the superior court judges of the state. *State ex rel. Schock v. Barnett,* 42 Wn.2d 929, 259 P.2d 404 (1953).

Furthermore, the fact must not be overlooked that probationers, as a class, are criminal offenders, both in a legal and social or community sense. And, once again, it should be remembered that each such person who is afforded the privilege of probation status by a judge of the superior courts of this state has either (a) pleaded guilty, or (b) has been convicted of an offense prohibited by the criminal laws of the state of Washington. No inference is intended that, once having broken the law, such individuals are forever branded as criminals and forever afterward are to be

treated as such. But the plain emotionally unvarnished facts are that probationers have broken the law. They have a criminal record; and as a result society has a substantial interest in guiding or conforming their future conduct—if not in terms of atonement or punishment, then clearly in terms of the possibility of their rehabilitation as productive members of society.

While those having probation status are accorded considerable freedom and liberty, their status and rights in this respect, and the matter of their liberty and freedom as well as limitations and termination thereof, are not to be placed in the same category with the quantum of rights the average law-abiding citizen possesses with respect to civil liberty and freedom. Stated another way, probationers are not average, consistently deserving law-abiding citizens. They have exhibited in the past a tendency (at least in one instance) to engage in legally disapproved antisocial conduct.

Considering probationers as a class of criminal offenders, there is a close analogy between their status and the status of others who have pleaded guilty—or have been convicted —and have been committed to institutional custody, supervision and discipline rather than being granted probation. The administration and control of the activities and conduct of the latter group is of course performed by the prison authorities. It would seem farfetched to suggest that the courts should invade this particular sphere of administrative prerogative and, by judicial fiat, exercise some sort of supervisory authority over existing prison administration, standards and practices.

In terms of further insight into the nature of probation and the administration of the probation system, similar reference and analogy could also be made to the functions of the State Board of Prison Terms and Paroles. The Board fixes the period of confinement and the terms and conditions of parole of those criminal offenders who have been committed to state institutional custody. In addition, the Board has the authority and the responsibility for administration of the state probation system. Judicial scrutiny, review,

and control over the everyday matters of prison administration and/or parole administration is not only *not feasible*; it is *inadvisable* in the light of the particular expertise and training necessary to provide effective institutional custody and parole supervision. Judicial invasion of prison administration inevitably would be most disruptive of prison programing, supervision, and discipline. The courts cannot and should not be expected to go into the prisons and decide which prisoners should be treated as "trustees." The point is obvious: prison officials must have effective control and authority in order to maintain an effective prison program. The same can be said of probation programing and administration.

Administrative and field probation officers, as well as prison officials, work diligently to establish workable programs for effective guidance of criminal offenders under their supervision and in their semicustody. Easy access to the courts by probationers to re-evaluate, or challenge, varied aspects of probation programing could well be disastrous in terms of the operation of the Washington state probation system. We are convinced that effective supervision of the probation vehicle by probation officers is a sensitive area, and one not particularly suited to detailed, over-all, or even general judicial supervision.

It may seem somewhat more appealing and persuasive to contemplate according full due process rights and privileges to probationers with respect to the termination of their liberty to be at large in their communities than would be the case with respect to the termination of the privileges of prison inmates. However, we are convinced that, while there are some differences in the status and the potential for rehabilitation as between probationers, inmates, and parolees, the problems of administration and the objectives are basically similar in all three areas. To reiterate: there are no constitutional rights respecting the acquisition of probation status. Logically and rationally, there should be correlatively few, if any, constitutional rights and standards controlling the revocation of probation and matters of ad-

ministration and supervision of those who have been granted that status.

██ The above outlined judicial views about the general nature of probation are re-enforced by the following language of RCW 9.95.220, which sets out certain legislative policy determinations made with respect to the operation of our probation system. This legislation provides as follows:

> Whenever the state parole officer or other officer under whose supervision the probationer has been placed shall have reason to believe such probationer is violating the terms of his probation, or engaging in criminal practices, or is abandoned to improper associates, or living a vicious life, he shall cause the probationer to be brought before the court wherein the probation was granted. For this purpose any peace officer or state parole officer *may rearrest any such person without warrant or other process. The court may thereupon in its discretion without notice revoke and terminate such probation.* In the event the judgment has been pronounced by the court and *the execution thereof suspended, the court may revoke such suspension, whereupon the judgment shall be in full force and effect,* and the defendant shall be delivered to the sheriff to be transported to the penitentiary or reformatory as the case may be. *If the judgment has not been pronounced, the court shall pronounce judgment after such revocation of probation and the defendant shall be delivered to the sheriff to be transported to the penitentiary or reformatory, in accordance with the sentence imposed.* (Italics ours.)

It should be noted that the foregoing statute provides that any peace officer or state parole officer may re-arrest a probationer *without warrant* or *other process;* furthermore, that the court may thereupon, in its discretion, *without notice, revoke and terminate* such probation. The statute further provides that suspended or deferred sentences may be *summarily revoked, sentence imposed, judgment rendered,* and the defendant delivered to the sheriff for transfer to the state penitentiary. While it is true that the revocation of probation does occur in court, and the function is performed by a judge of the superior court, there is nothing in the statute enacted by the legislature to require the

observance and application of due process standards as to this facet of the administration of the state probation system. We are not inclined, judicially, to impose, and to judicially assume responsibility for applying to probation those due process standards which unquestionably are applicable and must be observed in the more orthodox aspects of criminal law administration.

*State v. Shannon,* 60 Wn.2d 883, 889, 376 P.2d 646 (1962), contains the following statement:

> (f) Imposition of sentence, *following revocation of probation,* particularly in felony cases, is part of the *criminal prosecution* within the contemplation of Const. Art. 1, § 22 (amendment 10), at which time a defendant is entitled to be represented by counsel. *In re McClintock v. Rhay,* 52 Wn. (2d) 615, 328 P. (2d) 369; *In re Levi,* 39 Cal. (2d) 41, 244 P. (2d) 403. (First italicized portion ours.)

The petitioner relies strongly on the foregoing views expressed in *Shannon.* But the basic doctrinal premise of petitioner's argument seems to be that the principle applied in the landmark decision in *Gideon v. Wainwright,* 372 U.S. 335 (1963), should be applied, or extended and made to apply, in a probation context.

We will first discuss the above-quoted portion of the decision of this court in *State v. Shannon, supra.* The criminal offender therein initially pleaded guilty to grand larceny. His sentence was deferred, and probation granted. As in the instant matter, violations of the conditions of probation were reported. A revocation hearing was held at which the defendant was not represented by counsel and offered no evidence to counter reported noncompliance with the conditions of probation. Probation was revoked, and sentence was imposed. The criminal offender was thereupon transferred from probation supervision and custody to prison supervision and custody. The former probationer who thus became an inmate of the state penitentiary filed a petition for a writ of habeas corpus in the Superior Court for Walla Walla County. The matter was remanded to the Superior Court for Thurston County where the prisoner had been tried and convicted. *That court vacated the prior*

*revocation of the criminal offender's probation and, further-more, appointed counsel to advise and represent the peti-tioner at a hearing to be held on the question of whether or not probation status should be revoked and sentence imposed.* The Superior Court for Thurston County, with the defendant and his court-appointed counsel present, reached the same result as at the previous probation revo-cation hearing when the probationer had not been repre-sented by counsel. In other words, probation was revoked, and, immediately thereafter, sentence was imposed by the court. The defendant in the *Shannon* case thereupon ap-pealed.

In the *Shannon* opinion this court, as indicated hereinbe-fore, did, in fact, comment upon the right to counsel in a probation context; *i.e.,* the right to counsel apropos of (a) the revocation of probation and (b) the imposition of sen-tence. The language of *Shannon* cited by the petitioner herein could admittedly be interpreted; and extended, to the effect that a probationer whose status has been revoked has the right to counsel in a due-process constitutional sense at the imposition of his suspended or deferred sentence following revocation of his probation. *However, there was in fact no issue of the right to counsel explicitly before this court in Shannon.* The reason should be quite obvious. The probationer in *Shannon was in fact represented by court-appointed counsel* in the Thurston County Superior Court at the time of revocation of probation and the imposition of sentence. The issues specifically raised in *Shannon* are not issues herein.

*State v. Shannon, supra,* construed on the basis of the facts and the issues involved, and properly limited to the decision therein, is not apt in terms of the facts in the instant application for habeas corpus by Jerry D. Mempa. Fur-thermore, the statements in *Shannon* as to an alleged right to counsel at a hearing concerning revocation of probation and at the time of subsequent imposition of sentence con-stituted dicta which, upon further consideration, the court is reluctant and unwilling to apply in the instant case as the law of this state.

We also note in passing that *In re McClintock v. Rhay,* 52 Wn.2d 615, 328 P.2d 369 (1958)—cited in *State v. Shannon, supra*—*did not involve* revocation of probation and imposition of sentence. It is therefore distinguishable on this basis and provides no support for the claim of Mempa for a writ of habeas corpus in the instant case.

In this connection, we do not read *State v. O'Neal,* 147 Wash. 169, 265 Pac. 175 (1928), an early case involving a suspended sentence and a situation somewhat akin to the modern concept of probation, as being inharmonious with our reasoning in the instant case.

Insofar as *State v. Shannon, supra, In re McClintock, supra,* and *State v. O'Neal, supra,* may be inconsistent with the views expressed in this opinion, they are hereby overruled.

■ Our views as to the problem presented in the instant case may be summarized as follows: While probation is a modern innovation with much constructive potential in terms of the possible rehabilitation of criminal offenders, probation status, or the granting of it by the courts, is a matter of grace or privilege to be granted solely in the discretion of the courts. In the state of Washington the legislature has established a state probation system and has provided for its functions, operations, and administration. The legislature has not prescribed that due process standards shall be observed and applied by the superior courts of Washington in the very limited, but admittedly significant, function performed in granting, denying, limiting and terminating probation status of criminal offenders. We have previously held that there are no constitutional rights respecting the acquisition of probation status. And it is furthermore our reasoning that there are no constitutional rights involved in the termination or revocation of probationary status, or in respect to the concomitant operations of the superior courts involving imposition of either (1) suspended or (2) deferred sentences. The function involved, in terms of definitive action, is essentially quasi-administrative or plenary in nature. The operations are essentially no different from those performed administra-

tively by the State Board of Prison Terms and Paroles or by the prison authorities in administering other phases of penal administration in the state of Washington.

■ A criminal defendant adequately represented by counsel, who, with counsel at his side, upon the entry of a plea of guilty or in a trial culminating in conviction accepts probation status, does so on the basis of the existing statutes. These clearly authorize termination of probation and imposition of sentence without notice and without reference to allegations of denial of constitutional rights, admittedly pertaining to more orthodox criminal proceedings in the trial courts of this state. In such a context it may even be said there has been a waiver of any right to claim denial of criminal due process procedure in a proceeding involving termination of probation status and the imposition of sentence.

Underlying petitioner Mempa's claim in the instant case, there may have been, as indicated, some conjecture that the principles announced in the landmark *Gideon* case should apply or should be extended to proceedings involving revocation of probation and imposition of previously (a) suspended or (b) deferred criminal sentences. We are not constrained to read or apply *Gideon* in such a manner in the format or context of the administration of probation. Petitioner Mempa was adequately represented by counsel at the time he entered a plea of guilty and accepted the probation status. Thus, the petitioner was accorded full due process considerations at the appropriate time. He can make no valid claim of deprivation of an alleged constitutional right—at least not in a deferred sentence, probation, semicustody administrative context.

Nor can there be any valid contention that the decision of the United States Supreme Court in *Escoe v. Zerbst,* 295 U.S. 490 (1935), is directly controlling of the instant matter. That decision involved a petition for a writ of habeas corpus by an inmate of a federal penitentiary whose probation had been revoked by a federal district judge on an *ex parte* showing without the probationer being brought before the court. The main thrust of the opinion is that

such a procedure clearly contravened the intent of Congress as expressed in the language of the applicable federal probation statute—requiring that "such probationer shall forthwith be taken before the court." The *Escoe* opinion clearly negates the applicability of any specific constitutional safeguards and negatives the existence of constitutional due process rights pertaining to matters involving the revocation of federal probation. The above-mentioned federal statutory requirements constituted the sole basis for granting the writ of habeas corpus.

Furthermore, *Escoe v. Zerbst, supra,* did not involve any question of right to counsel—either at the probation hearing or at the imposition of sentence; and right to counsel at either stage of the proceedings is the only question raised by the petition in the instant case.

Thus, we do not regard the policy considerations and value judgments of the United States Supreme Court, as enunciated in *Escoe v. Zerbst, supra,* to be controlling relative to our disposition of the instant matter. The appropriate federal statute required the presence of the probationer before the court during hearings concerning revocation of probation. The Washington statute likewise requires that "he shall cause the probationer to be brought before the court wherein the probation was granted." But there is no further statutory requirement as to presence of counsel, burden of proof, right to confront witnesses, et cetera.

In all fairness to a probationer—and consonant with regular and orderly court procedure—we would anticipate that probationers should and will be given an opportunity to present their side of the story to the court respecting reported violation of the terms or conditions of probation. But the scope of any such inquiry or hearing rests solely in the discretion of the superior court judges of the state of Washington. No appeal, or a petition for a writ of habeas corpus, will be successful in this court where the question is whether the probationer was accorded his constitutional due process rights at the hearing. He simply has none.

For the foregoing reasons, we find no merit in petitioner Mempa's allegations of denial of constitutional criminal

due process procedural rights in the instant case. The application for habeas corpus should be denied. It is so ordered.

ROSELLINI, C. J., HILL, OTT, HUNTER, and HALE, JJ., concur.

HAMILTON, J. (dissenting)—I dissent. The majority, in overruling those portions of *State v. O'Neal*, 147 Wash. 169, 265 Pac. 175 (1928), *In re McClintock v. Rhay*, 52 Wn.2d 615, 328 P.2d 369 (1958), and *State v. Shannon*, 60 Wn.2d 883, 376 P.2d 646 (1962), which inferentially or directly characterize imposition of criminal judgment and sentence as part of a criminal prosecution, have taken, in my view, an unwarranted, unjustified and unrealistic step backward in the administration of justice. They do this at a time and in an era when constitutional rights and due process concepts are receiving increasing and expanding attention. And, by so doing, they open the door to and invite continued and increasing federal court disapproval and supervision of state court criminal procedures. We have gone through this in connection with search, arraignment, appointment of counsel, and confession procedures. Fortunately, in this state, we have been able to adapt to new concepts without undue inconvenience, principally because our procedures have been administered in the most part with befitting and uniform regard to fundamental fairness in the treatment of individuals before our criminal tribunals. When, however, we depart from fundamentally fair judicial processes, and cavalierly authorize discrimination in the right to counsel between one whose judgment and sentence is imposed immediately following conviction or plea of guilty and one whose judgment and sentence may be imposed anywhere from a few months to several years later, we are inviting probation and revocation procedures which can well lead to questionable and potentially voidable institutional commitments. Given no requirements for representation by counsel, it is inevitable that revocation procedures will vary from defendant to defendant, from county to county, and from trial judge to trial judge. Such a situa-

tion may be acceptable in some administrative contexts, but it can hardly be said to comport with the dignity of the judicial process or the traditional role of courts in criminal proceedings. Neither does it lend itself to the efficient administration of justice, for to short change an individual of any due process protections at the trial court level, when and where they can in the first instance be most effectively, efficiently and economically provided, is simply not good judicial policy. Disparity of standards among the courts in the search, confession and right to counsel cases has long since proven the unwisdom and inefficiency of such a course.

I have no quarrel with the majority's thesis that an errant individual who has been released from official custody by way of an order of deferred sentence remains, technically speaking, in "semi-custody" by virtue of probationary regulations. Neither do I differ with the theory that deferred sentences and probation are rehabilitative measures which descend upon the deserving miscreant "by the grace" of the sentencing judge. But, I find little realistic support for the majority's denial of the right to counsel either at the time of hearing or of final judgment and sentence arising out of these fine phrases. It is one thing to say that there is no constitutional or due process right to the chancellor's "grace," but quite another thing to say there are no due process rights at such a critical stage of a criminal prosecution as the revocation of probation and the imposition of final judgment and sentence. The two simply do not go hand in hand.

It cannot be gainsaid that the recipient of the "grace" of an order of deferred sentence is the beneficiary of some very real and substantial advantages which do not flow to one who is sentenced to a custodial facility, or who is otherwise subjected to a final judgment and sentence. The individual with the order of deferred sentence in his hand is ordinarily permitted to return to his community, his family and his job, subject only to the behaviorial restrictions and conditions arising out of his probationary status. In a very realistic sense he is free, for his personal liberty is but

slightly restricted. And, of significant importance, he is accorded the right, after a successful probationary period, of coming before the court and petitioning for a negation of his conviction and a dismissal of the charges. He may thus clear his record and remove outstanding penalties and disabilities. This latter privilege, even if unaccompanied by the other benefits, is a matter of considerable importance in our society today. It is clearly distinguishable from a procedural right. It amounts to a substantial right which is afforded by legislative enactment. RCW 9.95.240. Fundamental fairness and the dignity of the judicial process dictate that this right, to say nothing of the sacred right of personal liberty, should not be subject to nullification by the whim of peremptory "quasi-administrative" proceedings which do not even afford the right to be represented by counsel at the time of entering the nullifying judgment and sentence.

This court has held in *State v. Farmer,* 39 Wn.2d 675, 237 P.2d 734 (1951), that the recipient of an order of deferred sentence is not entitled to an appeal from his conviction until entry of final judgment and sentence.[2] Thus, the majority's view that due process concepts are fulfilled by affording counsel at the time of entry of the order deferring sentence, and that such concepts do not contemplate the right to counsel at any time thereafter to and including the time of entry of final judgment and sentence following a revocation proceeding is somewhat anomalous. In effect, the majority isolates this particular judgment and sentence from the context and concept of the ordinary criminal prosecution and says to the individual, you may now appeal for the first time in this prosecution; but, because you initially received a deferment of sentence, you are not now entitled to counsel to advise you of this right or to assist you in determining that a proper sentence is

---

[2] Of course, it is understood that the right of appeal following a plea of guilty is very limited. However, the deferred sentence statute permits entry of such orders following either a plea of guilty or a verdict of guilty. Hence, the right to counsel at the time of revocation must be considered in the context of either form of conviction.

imposed. The reason for this legalistic tightrope walking is obscure to me, particularly when considered with the fact that the final judgment and sentence, whether entered with or without an intervening order of deferred sentence, bodes well to deprive an individual of his personal liberty and to forever nullify any opportunity of clearing his record of the conviction.

The majority seek sustenance for their position in the statute dealing with revocation of suspended or deferred sentences. They quote with emphasis RCW 9.95.220, which provides in part that the superior court may, in its discretion, without notice, revoke and terminate probation. It may be granted that the statute purports to dispense with *formal notice* as a prerequisite to revocation; however, I find little in the statutory language or in any reasonable concept of fundamental fairness that dispenses with the necessity for some type of hearing or the right to be represented by counsel. On the contrary, by providing that the probationer should be brought before the court, after re-arrest *for cause, i.e.*, violating his probation, it is fair to assume the legislature anticipated that a judicious judicial proceeding would ensue, during the course of which the fundamental rights of society as well as those of the probationer would be respected. Certainly, the legislature did not intend that the courts should, at this stage of the prosecution, shed their traditional concern for fair play and due process concepts and assume a swashbuckling "quasi-administrative" attitude toward a defendant. At this point, it should be observed in passing that the legislature, in enacting standards for revocation of *parole*, provided that a *parolee* charged with a violation of his parole, short of conviction of another crime, would be entitled (a) to a fair and impartial hearing before the parole board, (b) to be represented by counsel at such hearing, and (c) to defend and present evidence on his own behalf. RCW 9.95.120. Thus, we have the incongruent situation of a convicted, incarcerated and paroled person possessed of more fundamental rights before an administrative board than this court is willing to afford to a probationer in a court of law.

Again, it seems to me, it is one thing to say that there is no legislative, constitutional or due process requirement of formal notice of a projected probation revocation, but quite a different thing to say there is no legal requirement for holding a hearing, assessing the reason for revocation, or affording counsel, if not at the hearing, at least at the time of entry of an appealable judgment and sentence.

The majority also appear to proceed upon the premise that once a person stands convicted of a crime and qualifies for and partakes of the conditional liberty afforded by an order of deferred sentence, he is immediately shorn of constitutional safeguards which otherwise surround a criminal prosecution. In short, the majority cast such a trespasser into the role of a second class citizen, despite the fact that his past history suggests the probability of reformation and warrants the grace of probation. It may be conceded that such a person, by virtue of the criminal conviction, waives or forfeits the benefits of some constitutional rights, *e.g.*, the right to further trial by jury. But, there seems to be little reason or justification to suppose that such a person waives or forfeits such basic and traditional safeguards as the right to be present at a judicial proceeding designed to revoke his probation, the right to be advised of the nature of the alleged probation violation, the right to present explanatory or mitigating evidence, or the right to be represented by counsel either at the hearing or at the time of imposition and entry of the appealable final judgment and sentence. While these rights as to probationers may not be fully spelled out in the federal and state constitutions, it would seem reasonable to conclude that they inhere in those documents, if in no other way than through the equal protection clause of the fourteenth amendment to the federal constitution. Certainly, there can be little doubt that the right to personal liberty is as valuable and sacred to one who has been convicted of a crime as to one who has not. I find nothing in our constitutions that indicates a contrary belief. Neither can it be seriously questioned that the strength of our constitutional form of government lies

in the protection afforded to the weak and unfortunate against injustice or arbitrary and capricious action. And, if this be so, it ill behooves us to sap this strength by isolating, with surgeon-like precision, various phases of a criminal prosecution for the purpose of parceling out, with Scrooge-like finesse, due process protections. Thus, it seems incompatible to say to a defendant that he is entitled to constitutional safeguards in all the usual facets of a criminal prosecution, including the right to counsel at all stages of the proceeding, unless and until he is granted probation, whereupon due process concepts and society's interest in the preservation of fair standards of justic vanish in the mystical clouds of judicial grace. Instinctively one shrinks from this autocratic approach, for instinctively one feels that any person is entitled to be properly heard when a court of law undertakes to deprive that person of his personal liberty, conditional though that liberty might be.

The majority next point out that deferred sentences and probation are comparatively modern, flexible, sensitive and potent innovations in the field of criminology. From this they then posit that courts should be slow to translate into constitutional terms the theory that the "privilege" of probation is a matter of "grace," and that revocation is a matter of "discretion." The majority, however, distort the probation concept and attach too much significance to the above quoted words when they characterize the revocation procedure as a quasi-administrative function, and thus seek to carry it beyond constitutional dimensions and beyond the normal range of the judicial process.

The adjudication of criminal guilt and the meting out of statutory punishment is distinctively, traditionally and constitutionally a judicial function. It is no more an administrative function than granting, denying or modifying a divorce decree, and it does not partake of an administrative function simply because there are alternative solutions available in a given case. With but relatively few statutory exceptions, the administrative function in the field of penology basically begins and ends with the supervision of the convicted offender. Because both the judge and the admin-

istrator may be interested and concerned with reformation of the offender does not mean that their functions become indiscernibly commingled, and, because a judge may accept, reject, or modify a recommendation of probation or revocation by an administrator does not mean that the judiciary is disruptively invading a peculiarly administrative province.

The bare and unvarnished truth is that the courts should and do stand as a bulwark between the individual and the possibility of mistaken, prejudiced, whimsical or arbitrary administrative action. And, when the courts obeisantly hesitate to surround any facet of their proceedings and any individual involved therein with adequate, even though minimal, constitutional safeguards they are abdicating their responsibility.

The majority appear willing to concede that, while the granting of probation in the first instance is not a matter of right, a defendant is constitutionally entitled to be represented by counsel at that point. The stakes then are the defendant's liberty, his reputation and future record, and his appellate remedies. The state is represented by the prosecuting attorney. If the defendant receives a deferment of sentence and probation and subsequently stands before the same court accused by an administrative officer of a probation violation, the stakes are identical. The state is again represented by the prosecuting attorney and to some degree by the administrative officer. The defendant, however, now stands barren of a right to the assistance of counsel. I find no purpose, reason or fairness in this situation.

The fear that the presence of counsel would tend to convert such proceedings into protracted hearings is without merit and is nothing more than a red herring. If there is a valid factual issue as to the alleged probation violation, the defendant is not only entitled to a fair hearing, but as a matter of practical necessity he should have the assistance of counsel in evaluating his defense, assembling his evidence, subpoenaing and interrogating his witnesses, and cross-examining opposing witnesses. The average defendant is otherwise virtually helpless, and it is only in this way that

the court can be fully, intelligently and efficiently advised. In the vast majority of cases, however, there is no dispute as to the probation violation. The only issue is the nature and extent of the punishment, a matter of vital concern to both the defendant and the court. Here again counsel, with his knowledge of court procedures, the defendant's background, and the alternative solutions available can be of inestimable assistance to the defendant and of substantially more help than hindrance to the court. At the very minimum, the presence of counsel would assure the court that the defendant was advised of his situation, and remove the lurking feeling of unfairness that surrounds sending an unrepresented person to a penal institution.

Likewise without merit is the fear that providing constitutional safeguards at the revocation stage would weaken the rehabilitative purposes of probation. Retribution, however swift, should always be accompanied by fundamental fairness, particularly when administered by and through a court of law. In fairness to any probationer, the procedures utilized should be designed to avoid the possibility, however remote, of revocations founded on accusations arising out of mistake, prejudice and caprice. The threat of arbitrary or whimsical commitment does not tend to encourage either cooperation or successful rehabilitation. Reformation can best be accomplished by fair, consistent, and straightforward treatment of the individual. No doubt it was this thought, in part at least, which prompted the drafters of the Model Penal Code for The American Law Institute to provide, in Tent. Drafts Nos. 2 (1954) and 4 (1955), § 301.4, as follows:

> The Court shall not revoke a suspension or probation or increase the requirements imposed thereby on the defendant except after a hearing upon written notice to the defendant of the grounds on which such action is proposed. The defendant shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel.

Finally, and perhaps fatally, the denial of counsel to a defendant at the revocation stage of probation could well

raise serious constitutional questions of discrimination between affluent and indigent probationers. As the majority opinion inferentially points out, in all instances a probationer appearing before the superior court in a revocation proceeding will ordinarily be given an opportunity to be heard. As a practical and realistic matter, those probationers who can afford counsel will be accorded the opportunity of having counsel at their side throughout the proceeding. It would, indeed, be the rare superior court judge who would deny them such a privilege. Yet the majority would deny this right to indigents, thereby projecting discrimination between probationers who can afford counsel and those who cannot. Due process and equal protection prohibit the accident of economic ability from being a criterion for right to counsel. See *Douglas v. California,* 372 U. S. 353, 9 L. Ed. 2d 811, 83 Sup. Ct. 814 (1963); *Griffin v. Illinois,* 351 U. S. 12, 100 L. Ed. 891, 76 Sup. Ct. 585, 55 A.L.R.2d 1055 (1956).

Turning then from the general to the specific, the majority opinion, as it relates to petitioner, in effect concludes that petitioner by accepting a deferred sentence knowledgeably waived any and all rights to due process of law at the time of any subsequent revocation proceeding. Aside from the fact that it is extremely doubtful that any such theory of waiver was fully explained to petitioner at the time of the entry of the order of deferred sentence, the harshness and rigidity of the position taken by the majority is but emphasized by the facts appearing in this case. It is conceded by the attorney general, and supported by the record, that at the time of the offense, the arraignment proceedings and the revocation, all in 1959, petitioner was but 17 years of age. The record further indicates that petitioner had not completed the eighth grade, and that since 1956 he had progressed through a variety of state institutions including Green Hill Academy, Eastern State Hospital, the Diagnostic Center at Fort Worden, Western State Hospital, and again Eastern State Hospital with a conflict of opinion between the latter two facilities as to whether he was a psychopathic delinquent. His migrations through these various institutions were under the aegis of the juvenile court. His first

appearance in superior court arose out of the offense for which he is presently in custody.

Against this background, even the attorney general expresses some doubt as to petitioner's ability to fully comprehend the nature of his situation at the time of the revocation hearing. And, under the circumstances, it would be somewhat of a strain, to say the least, to assume that he fully appreciated all ramifications of the order of deferred sentence and at the time of entry of that order knowingly, intelligently and competently waived all constitutional rights with respect to subsequent proceedings. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 Sup. Ct. 1019, 146 A.L.R. 357 (1938).

In summary and in conclusion, I would

(1) Reaffirm the right to counsel at the time of imposition of sentence as established in the *O'Neal, McClintock* and *Shannon* cases, *supra;*

(2) Prospectively overrule that portion of *In re Jaime v. Rhay,* 59 Wn.2d 58, 365 P.2d 772 (1961), which holds that a probationer is not entitled to counsel at the revocation hearing, and afford such right at all future revocation hearings; and

(3) Grant the writ of habeas corpus and remand petitioner to the sentencing court for rehearing and resentencing with counsel present.

DONWORTH and WEAVER, JJ., concur in the result of the dissent.