IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37207-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M.N.H., | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — The appeal of this technically moot juvenile offender proceeding presents two issues of first impression that might often be raised in violation hearings conducted under RCW 13.40.200 and continually evade review.

The appellant, who uses the pseudonym Megan, contends that RCW 13.40.200 violates principles of due process established in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). This is because even after she had been detained for violating community supervision terms for more than the 30 days she contends was her standard range, RCW 13.40.200 authorized the juvenile court to impose additional confinement, based on proof of a violation by a preponderance of the evidence. She contends the statute further violates due process by requiring her to disprove the

willfulness of her violations, where willfulness is a fact essential to a sanctionable violation, relying on *State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014).

We reject Megan's challenges and affirm.

FACTS AND PROCEDURAL BACKGROUND

In March 2019, Megan, then 13 years old, pleaded guilty to fourth degree assault. The information identified the maximum sentence for the charge as 364 days. Her statement on plea of guilty and the disposition order identified her standard range sentence as local sanctions. The juvenile court entered a disposition order that imposed 3 days of confinement, 12 months of community supervision, and 16 hours of community service.

Megan repeatedly violated the conditions of her community supervision. By the end of summer 2019, this had resulted in four violation hearings and an additional 61 days of confinement.

On September 18, Megan was summoned to appear in juvenile court again, facing allegations of failing to attend school and failing to follow parental rules and curfew. This time, she contested the allegations. A hearing on the contested allegations was scheduled for October. In anticipation of the hearing, Megan filed a motion challenging the constitutionality of RCW 13.40.200, which dictates the standard and procedure for penalizing a juvenile offender's failure to comply with an order of restitution, community supervision, penalty assessment, or confinement. Megan argued that RCW 13.40.200(2)

2

violates due process by placing the burden of disproving the willfulness of a violation on the juvenile. Relying on *Apprendi* and *Blakely*, she also argued that although RCW 13.40.200(3) allows confinement for violations proved by a preponderance standard to be imposed until the combined total number of days spent in detention reaches an adult's maximum term of confinement for the underlying offense, the federal and state constitutions do not. She argued that once the period of a juvenile offender's confinement exceeds the high end of the standard range, the State is required to prove all elements of a willful violation beyond a reasonable doubt. She argued that in her case, the high end of the standard range was 30 days, the high end for local sanctions.[1]

The juvenile court rejected Megan's challenges to the constitutionality of RCW 13.40.200. It found that she violated the disposition order and that some but not all of her violations were willful. It imposed a sentence of 10 days' additional confinement. At Megan's request, it suspended the sentence. When Megan was returned to court in early November accused of further violations, the court summarily revoked the suspension and ordered the 10 days to be served. Megan appeals the court's November order as well as a prior detention.

---

[1] "Local sanctions" is defined by RCW 13.40.020(18) to mean "one or more of the following: (a) 0-30 days of confinement; (b) 0-12 months of community supervision; (c) 0-150 hours of community restitution; or (d) $0-$500 fine."

ANALYSIS

*Two technically moot issues raised by the appeal are of continuing and substantial public interest and will be reviewed*

Megan's opening brief acknowledges she has served the detention imposed, making her appeal technically moot. She nonetheless asks us to review five assignments of error, arguing that all involve matters of continuing and substantial public interest.

When an appeal is moot, meaning we can no longer provide the appellant with effective relief, we may retain it and decide if it "involves matters of continuing and substantial public interest." *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). To determine whether the appeal presents issues of continuing and substantial public interest, we consider "'[1] the public or private nature of the question presented, [2] the desirability of an authoritative determination for the future guidance of public officers, and [3] the likelihood of future recurrence of the question.'" *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972) (quoting *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622, 104 N.E.2d 769 (1952)). We may also consider "the likelihood that the issue will never be decided by a court due to the short-lived nature of the case." *State v. B.O.J.*, 194 Wn.2d 314, 321, 449 P.3d 1006 (2019) (internal quotation marks and citation omitted) (quoting *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 712, 911 P.2d 389 (1996)). Because of the relatively short length of most juvenile offender

dispositions, appellate courts rarely have the opportunity to consider them before they become moot. *Id.*

Only two of Megan's assignments of error warrant review under these standards: her *Apprendi*-based assignment and her *W.R.*-based burden-shifting assignment.[2] We first review the procedure followed by the juvenile court and then review her constitutional challenges in the order stated.

> *Statutory burdens of proof and authorized penalties when juvenile offenders violate conditions of community supervision*

RCW 13.40.200, part of the Juvenile Justice Act of 1977, authorizes the juvenile court to modify a disposition order when a youthful offender fails to comply with its terms, including its conditions of community supervision. At a hearing on the State's or the court's own motion to modify the order, "[t]he state shall have the burden of proving *by a preponderance of the evidence* the fact of the violation." RCW 13.40.200(2) (emphasis added). The juvenile court may impose a penalty of confinement "[i]f [it] finds that a respondent has *willfully* violated the terms of an order pursuant to subsections

---

[2] Megan's first and second assignments of error involve alleged procedural missteps that were not objected to below. Given the likelihood that these alleged errors would have been avoided had there been a timely objection, they do not warrant review.

Her fifth assignment of error—that the imposition of a sanction under RCW 13.40.200 is a criminal contempt proceeding that must be prosecuted as a criminal case— has already been rejected in a published decision of this court. *See State v. Martin*, 36 Wn. App. 1, 670 P.2d 1082 (1983), *rev'd on other grounds*, 102 Wn.2d 300, 684 P.2d 1290 (1984). Megan does not persuade us that the issue should be reexamined.

(1) and (2) of [RCW 13.40.200]." RCW 13.40.200(3) (emphasis added). "*The*

*respondent shall have the burden of showing that the violation was not a willful refusal* to

*comply* with the terms of the order." RCW 13.40.200(2) (emphasis added).

If the court finds that a respondent has willfully violated the terms of an order

pursuant to subsections (1) and (2) of this section, "it may impose a penalty of up to thirty

days' confinement." RCW 13.40.200(3). "Penalties for multiple violations occurring

prior to the hearing shall not be aggregated to exceed thirty days' confinement." *Id.*

"Regardless of the number of times a respondent is brought to court for violations of the

terms of a single disposition order, the combined total number of days spent by the

respondent in detention shall never exceed the maximum term to which an adult could be

sentenced for the underlying offense." *Id.*

This court has construed the statute's plain language as providing that "[a]t a given

violation hearing . . . a juvenile may be punished for all prehearing violations of a single

disposition order, regardless of the number and nature of such violations—provided that

the aggregate punishment for those violations does not exceed 30 days, and provided

further that the aggregate punishment then and previously imposed does not exceed the

statutory maximum term for an adult." *State v. Barker*, 114 Wn. App. 504, 507-08,

58 P.3d 908 (2002) (emphasis omitted). The juvenile court never imposed more than 30

days' confinement on Megan at any given violation hearing. The aggregate punishment

the court imposed never came close to the 364 day maximum term to which an adult

6

could be sentenced for fourth degree assault. Megan has no statutory basis for challenging the detention ordered by the court.

> *The State was not required by due process to prove Megan's violations beyond a reasonable doubt*

The due process clause of the Fourteenth Amendment to the United States Constitution guarantees, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The United States Supreme Court has interpreted this due process guaranty as requiring the State to prove, even in juvenile *adjudicatory* proceedings, "beyond a reasonable doubt . . . every fact necessary to constitute *the crime with which* [*a defendant*] *is charged.*" *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (emphasis added).

Following *Winship*, the Supreme Court "ha[s] made clear beyond peradventure that *Winship's* due process and associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" *Apprendi*, 530 U.S. at 484 (second alteration in original) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 251, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (Scalia, J., dissenting)). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for *a crime* beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Id.* at 490 (emphasis added). Washington law, applying article I, sections 21

7

and 22 of the Washington Constitution, is in accord. *State v. Williams-Walker*, 167 Wn.2d 889, 896, 225 P.3d 913 (2010) (citing *State v. Frazier*, 81 Wn.2d 628, 633, 503 P.2d 1073 (1972)). The relevant statutory maximum for a Washington conviction is the high end of the standard range—the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303.

Citing this case law, Megan argues that because confinement for her community supervision violations alleged in September would take her cumulative confinement well beyond the 30-day high end of local sanctions, *Apprendi* and *Blakely* apply.

Neither below nor on appeal does Megan argue that the same case law required her violation to be proved to a jury. "Juvenile adjudicatory proceedings have never been equated with a 'criminal prosecution' for purposes of the Sixth Amendment." *State v. Tai N.*, 127 Wn. App. 733, 738, 113 P.3d 19 (2005) (citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 541, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971)). "Washington courts have also consistently held that juvenile offenders do not have a right to jury trials under the Washington Constitution." *Id.*; *State v. Meade*, 129 Wn. App. 918, 925, 120 P.3d 975 (2005) ("We hold that *Blakely v. Washington*, which held that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,' is not applicable to juvenile proceedings; a sentence above the standard range does not need to be submitted to a jury.").

Megan argues only that the case law requires proof of her violations beyond a reasonable doubt. Most relevant to Megan's argument is the four-member plurality opinion in *United States v. Haymond*, ___ U.S. ___, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019), a case that for the first time addressed whether additional confinement imposed on adults for violating conditions of supervisory relief must be based on facts proved to a jury beyond a reasonable doubt. Megan cites *Haymond*'s plurality, but even it does not support her proposed extension of *Apprendi.* Justice Breyer's concurring opinion, which provides the holding of the case, is fatal to her argument.

In *Haymond*, an offender convicted of possessing child pornography in violation of federal law had his supervised release revoked after an unannounced search of his computer and cellphone turned up 59 images that appeared to be child pornography. Under 18 U.S.C. § 3583(e)(3), a district judge may (but is not required to) impose a new prison term on a defendant who violates the conditions of his supervised release that is up to the maximum period of supervised release authorized for the original crime of conviction, subject to certain limits. 139 S. Ct. at 2374. The revocation of Haymond's supervised release was governed by the unusual and harsher 18 U.S.C. § 3583(k), however. Under § 3583(k), a judge who finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses, including possession of child pornography, *must* impose an additional prison term of at least five

9

years and up to life, without regard to the length of the prison term authorized for the defendant's crime of conviction.

The plurality held that an accused's final sentence includes any supervised release time imposed thanks to his initial offense, "and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime." 139 S. Ct. at 2380. But it held that "a jury must find any facts that trigger a *new* mandatory minimum prison term," and must find those facts beyond a reasonable doubt. *Id.* The plurality went to great lengths to make clear its holding was based on § 3583(k)'s mandatory minimum sentence and *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), saying, e.g., "we need not address the constitutionality of the statute's effect on his maximum sentence under *Apprendi*." *Haymond*, 139 S. Ct. at 2379 n.4, 2382 n.7 ("Just as we have no occasion to decide whether § 3583(k) implicates *Apprendi* . . . we do not pass judgment one way or the other on § 3583(e)'s consistency with *Apprendi*."), 2383 ("As we have emphasized, our decision is limited to § 3583(k)—an unusual provision enacted little more than a decade ago—and the *Alleyne* problem raised by its five-year mandatory minimum term of imprisonment."). Accordingly, even if the holding of *Haymond* were that of the plurality, it would not mean that *Apprendi* prevented the juvenile court in Megan's case from penalizing her violation of community supervision conditions with additional confinement up to the statutory limit, in her case, of 364 days.

10

The holding of *Haymond* is not that of the plurality, however. Justice Breyer concurred in the judgment, and his opinion is the Supreme Court's holding because it supplies the narrowest ground supporting the judgment. *See Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotation marks omitted). Justice Breyer agreed with the four-justice dissent that "the role of the judge in a supervised-release proceeding is consistent with traditional parole." *Haymond*, 139 S. Ct. at 2385 (Breyer, J., concurring in judgment). He stated clearly, "I would not transplant the *Apprendi* line of cases to the supervised-release context," citing "potentially destabilizing consequences." *Id.*

Justice Breyer nevertheless agreed with the plurality that § 3583(k) was unconstitutional. He observed that revocation of supervised release is typically understood as "'part of the penalty for the initial offense.'" *Id.* at 2386 (quoting *Johnson v. United States*, 529 U.S. 694, 700, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000)). And "[t]he consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's 'breach of trust'—his 'failure to follow the court-imposed conditions' that followed his initial conviction—not 'for the particular conduct triggering the revocation as if that conduct were being sentenced as

11

new federal criminal conduct.'" *Id.* (quoting U.S. SENTENCING COMM., GUIDELINES MANUAL ch. 7, pt. A, intro. 3(b) (Nov. 2018)).

Justice Breyer found the more typical consequences for violating conditions of supervised release under § 3583(e)(3) to be consistent with this view. *Id.* He found § 3583(k) "difficult to reconcile with this understanding of supervised release," however, continuing,

> [*T*]*hree aspects of this provision, considered in combination, lead me to think it is less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach.* First, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. Second, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. Third, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "commit[ted] any" listed "criminal offense."
>
> Taken together, *these features of § 3583(k) more closely resemble the punishment of new criminal offenses, but without granting a defendant the rights, including the jury right, that attend a new criminal prosecution.* And in an ordinary criminal prosecution, a jury must find facts that trigger a mandatory minimum prison term. *Alleyne*, 570 U.S. at 103.

*Id.* at 2386 (emphasis added and omitted) (second alteration in original).

RCW 13.40.200 has none of the three features that Justice Breyer concluded make § 3583(k) unlike revocation of supervised release and more like punishment for a new offense. First, RCW 13.40.200 does not apply only to a discrete set of criminal offenses specified in the statute. Any willful violation of an order of restitution, community

supervision, penalty assessment or confinement can be the basis for imposing a penalty. As Megan's case illustrates, the violation need not even be a crime; in her case, it was sometimes a failure to attend school daily or obey parental rules. Second, RCW 13.40.200 imposes only maximums for individual and cumulative penalties, something that presents no constitutional concern. It does not take away a judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. And third, it does not impose mandatory minimum penalties or limit the judge's discretion in any other particular matter.

Since RCW 13.40.200 does not have any of the features Justice Breyer holds would cause it to be viewed as punishment for a new offense, there is nothing unconstitutional about the authority it grants to juvenile courts to impose additional confinement for violations proved by a preponderance of evidence.

Megan's argument that the State was required to prove her violations beyond a reasonable doubt conflicts with long-standing Washington case law—case law she hoped to avoid by arguing it was abrogated by *Apprendi* and *Haymond.* It remains good law, though, and is fatal to her position. Even in the case of adult offenders, the Washington Supreme Court has held that when the State seeks revocation of probation, it is not required to prove an offender's breach of a condition of his probation beyond a reasonable doubt. "A revocation or modification proceeding under our statutes is not a *criminal prosecution* within the contemplation of Const. Art. 1, § 22 (amendment 10)

13

entitling a defendant, as a matter of right, to the privileges therein accorded." *State v. Shannon*, 60 Wn.2d 883, 888, 376 P.2d 646 (1962) (citing *In re Jaime v. Rhay*, 59 Wn.2d 58, 365 P.2d 772 (1961)), *overruled in part on other grounds by Mempa v. Rhay*, 68 Wn.2d 882, 416 P.2d 104 (1966), *rev'd*, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967). At a probation revocation hearing,

> the court need not be furnished with evidence establishing guilt of criminal offenses beyond a reasonable doubt. All that is required is that the evidence and facts be such as to *reasonably satisfy the court* that the probationer has breached a condition under which he was granted probation, or has violated any law of the state or rules and regulations of the Board of Prison Terms and Paroles.

*State v. Kuhn*, 81 Wn.2d 648, 650, 503 P.2d 1061 (1972) (emphasis added) (citation omitted); *see also Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974) ("It is clear that there is a different level of proof applicable to revocation hearings than criminal proceedings."); *City of Aberdeen v. Regan*, 170 Wn.2d 103, 113, 239 P.3d 1102 (2010) ("The burden in probation revocation hearings is reasonable satisfaction," even when the condition of probation that is violated is a requirement to commit "[n]o criminal *violations of law.*" (alteration in original)).

Just as Justice Breyer observed in *Haymond* that penalties for violating conditions of supervised release are part of the penalty for the initial offense and the breach of trust, our Supreme Court has held that "'revocation is not punishment for the subsequent events which violate the parole.'" *Regan*, 170 Wn.2d at 111 (quoting *Standlee*, 83

Wn.2d at 407). And the statutory penalty imposed under RCW 13.40.200 on a juvenile offender has been described by this court as "modification of the order and imposition of confinement at the specified rate in lieu of the offender's privilege of serving his sentence in the less restrictive manner authorized by the order of disposition. The statute does not authorize the judge to impose an additional sentence." *State v. Martin*, 36 Wn. App. 1, 5, 670 P.2d 1082 (1983), *rev'd on other grounds*, 102 Wn.2d 300, 684 P.2d 1290 (1984).

There being no new punishment for a new offense, the State's burden of proof by a preponderance of the evidence affords due process.

> *Due process does not require proof of the statutory element of a willful refusal to comply to be borne by the State*

The same legal authority resolves Megan's second argument that requiring her to disprove willfulness violates her right to due process. She relies on *W.R.* Yet the requirement of *W.R.* that "the State cannot require the defendant to disprove any fact that constitutes *the crime charged*" is a corollary of the due process guaranty that the State must "prove 'beyond a reasonable doubt . . . every fact necessary to constitute the *crime* with which [a defendant] is charged.'" *W.R.*, 181 Wn.2d at 762 (emphasis added) (alterations in original) (quoting *Winship*, 397 U.S. at 364). By its terms, *W.R.* applies only to prosecutions for crimes. Hearings under RCW 13.40.200 are not prosecutions of a new crime.

15

No. 37207-3-III
*State v. M.N.H.*

     Affirmed.

                                               _____
                                               Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

16