[No. 42729.   En Banc.   January 31, 1974.]

*In the Matter of the Application for a Writ of Habeas Corpus of* DARYL STANDLEE, *Petitioner,* v. SIDNEY E. SMITH, *Respondent.*

*Phillip H. Ginsberg, Public Defender,* for petitioner.

*Slade Gorton, Attorney General,* and *Thomas A. Prediletto, Assistant,* for respondent.

BRACHTENBACH, J.—Petitioner seeks a writ of habeas corpus. The matter was first presented to the Court of Appeals which entered an order denying the writ. We granted review.

Petitioner was on parole when the Board of Prison Terms and Paroles entered an order suspending that parole based upon alleged violations of the terms and conditions thereof. The six violations alleged were based on charges that petitioner had abducted a mother and her daughter, had subsequently assaulted them, attempted to rape the mother and molested the daughter. The day before the revocation hearing was held the petitioner was charged by information with two counts of assault in the second degree.

A revocation hearing was then held with petitioner being represented by counsel. The hearing officer found petitioner

guilty of the six charged violations, but continued the hearing, at defense counsel's request, until the felony charges were tried.

A nonjury trial of the assault charges resulted in acquittal based upon an alibi defense. The revocation hearing was then concluded with the same alibi testimony being presented to the hearing officer. That officer concluded that petitioner was in fact the assailant, that parole should be revoked and that petitioner was a risk to society in view of his past history of sexual assaults.

■ Petitioner's main contention is that the doctrine of collateral estoppel prohibits the parole board from finding him guilty of violations when the issue of guilt had been resolved in his favor in the superior court. The doctrine of collateral estoppel prevents relitigation between the same parties of a particular issue or determinative fact. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 429 P.2d 207 (1967).

There is no doubt that collateral estoppel is a part of the Fifth Amendment guarantee against double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970).

■ Equally clear is the proposition that the revocation of parole is not part of a criminal prosecution. *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). Parole is revoked for violation of the terms and conditions of parole and as part of the continuing consequences of the crime for which parole was granted. Parole revocation is not punishment for the subsequent events which violate the parole and which may also constitute a separate crime. *People v. Morgan,* 55 Ill. App. 2d 157, 204 N.E.2d 314 (1965).

■ The distinction between a criminal proceeding and a parole revocation hearing is important because of the rule that a difference in the degree of the burden of proof in the two proceedings precludes application of collateral estoppel. In *Helvering v. Mitchell,* 303 U.S. 391, 82 L. Ed. 917, 58

S. Ct. 630 (1938), the court was confronted with an attempt by Internal Revenue to assess a deficiency for fraud with intent to evade tax after the taxpayer had been acquitted on an indictment for willful attempt to evade tax. Mr. Justice Brandeis said at page 397:

> The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata*. The acquittal was "merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." *Lewis* v. *Frick*, 233 U. S. 291, 302.

*Neaderland v. Commissioner*, 424 F.2d 639, 642 (2d Cir. 1970), is instructive as to the reason for nonapplication of collateral estoppel where the degree of proof varies.

> Collateral estoppel is confined, however, to "situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." . . . Even if the issue is identical and the facts remain constant, the adjudication in the first case does not estop the parties in the second, unless the matter raised in the second case involves substantially "the same bundle of legal principles that contributed to the rendering of the first judgment." . . .
>
> . . . When a jury acquits, it decides only that an accused is not proven guilty of the offense charged beyond a reasonable doubt, and the Commissioner is not foreclosed thereby from attempting to show fraud in the civil counterpart against the same defendant by a fair preponderance of the evidence. Helvering v. Mitchell, *supra*, 303 U.S. at 397-398, 58 S.Ct. 630. This burden of proof factor alone is sufficient to demonstrate that the "bundle of legal principles" applicable in a civil suit differs significantly from that in a criminal trial.

(Citations omitted.)

██ It is clear that there is a different level of proof applicable to revocation hearings than criminal proceedings. In describing comparable probation revocation proceedings, this court said:

> At the probation revocation hearing, the court need not be furnished with evidence establishing guilt of criminal

offenses beyond a reasonable doubt. . . . All that is required is that the evidence and facts be such as to reasonably satisfy the court that the probationer has breached a condition under which he was granted probation, or has violated any law of the state or rules and regulations of the Board of Prison Terms and Paroles.

(Citations omitted.) *State v. Kuhn,* 81 Wn.2d 648, 650, 503 P.2d 1061 (1972).

Such distinction has been recognized elsewhere.

The degree of proof necessary for parole or probation revocation is less than that required to sustain a criminal conviction. The hearing judge need only be reasonably satisfied that the terms of the parole have been violated . . .

*State v. Wilhite,* 492 S.W.2d 397, 399 (Mo. Ct. App. 1973). *Accord, People v. Kuduk,* 320 Ill. App. 610, 51 N.E.2d 997 (1943); *People v. Whittaker,* 101 Ill. App. 2d 432, 243 N.E.2d 467 (1968).

Here the alibi witness created a reasonable doubt in the trial judge's mind and he necessarily acquitted petitioner. On the other hand, with a lesser standard of proof, the hearing officer believed the victims, discounted the alibi witness who had created a reasonable doubt in the judge's evaluation and importantly felt the petitioner was a threat to society if at large. The hearing officer may have been influenced by petitioner's initial refusal to testify or to identify the alibi witnesses at the first hearing.

Keeping in mind the different procedures and purposes of the two separate proceedings, and relying on the above principles, we hold that collateral estoppel does not prohibit the parole revocation under these circumstances.

Petitioner relies heavily on *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). It is true that those cases establish that certain minimum requirements of due process apply to revocation hearings. However, we do not read those decisions as prohibiting the result we reach here. Both cases emphasize the

limited rights accorded the parole or probation violator. The *Morrissey* case, in fact, recognizes the interests of society in dealing with revocation in a nonadversary manner:

> Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.

■ Finally petitioner contends that he was denied due process because one alibi witness was not present at the final revocation hearing. He alleges that this was due to his inability to pay her expenses to travel from Oregon. However, a transcript of the witness' testimony at the superior court was presented to the hearing officer. *Gagnon v. Scarpelli, supra* at 783 n.5, answers the issue:

> While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.

The writ is denied.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, STAFFORD, and WRIGHT, JJ., and LeVEQUE, J. Pro Tem., concur.

UTTER, J. (dissenting)—My narrow area of disagreement with the majority is whether, under the circumstances of this case, the burden of proof beyond a reasonable doubt should apply to the allegations of the violation in a parole revocation hearing. In this case, the parole revocation hearing was concluded after the defendant's acquittal on the criminal charges and, as I understand the majority opinion, it concedes that, if the beyond a reasonable doubt test applies, the parole board would be collaterally estopped to reach a different result from the superior court trial which applied that test.

In *Morrissey v. Brewer*, 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), the court stated:

> We see, therefore, that the liberty of a parolee, al-

though indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

In *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), the court again emphasized that "[e]ven though the revocation of parole is not a part of the criminal prosecution . . . the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process."

An issue before the court in *Gagnon* was whether the right to counsel during probation or parole revocation proceedings was an inherent part of due process. The court emphasized that fundamental fairness was the touchstone of due process. It then ruled that, while counsel need not be provided in each case, they presumptively should be provided in cases where, after being informed of their right to request counsel, the probationer or parolee makes such a request based on a timely and colorable claim that he has not committed the alleged violation of the conditions upon which he is at liberty. Alternately, the court indicated counsel should also presumptively be appointed even if the violation is uncontested or a matter of public record if there are substantial reasons which justify or mitigate the violation and make revocation inappropriate and the reasons are complex or otherwise difficult to develop or present.

If the right to counsel is granted a parolee at a revocation hearing in cases where the offense is denied, as a basic due process right, how can we fail to also apply the beyond a reasonable doubt standard in the same circumstances where the offense is denied, as a basic right of due process and fundamental fairness? I believe the language and logic of *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct.

1068 (1970), compels such a result. There, at pages 363, 364, the court stated proof beyond a reasonable doubt has a "vital role in our criminal procedure for cogent reasons" and emphasized:

> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

The policy reasons for this, as stated by the court at page 363, were that:

> It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." . . . "a person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case."
>
> . . . "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt." To this end, the reasonable-doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue." . . .
>
> Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt

whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.

The court made clear that these considerations applied to adult proceedings and only after enunciating them, did it turn to the question of their application to juvenile proceedings.

The issues before the court in *Morrissey* and *Gagnon* did not involve the precise issue raised by *Winship*. The only context in which *Winship* was mentioned in either of these two cases, was in footnote 12, page 789 of *Gagnon*. There the court discussed why counsel were not needed in every revocation hearing as distinguished from their need in original criminal cases. The court stated they were dealing "not with the right of an accused to counsel in a criminal prosecution, but with the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime." The footnote then cited *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), which established a juvenile's right to counsel. The court distinguished this right available to juveniles, if requested, in every case where they are charged with a crime, noting that one charged "with violation of a generally applicable statute is differently situated from an already-convicted probationer or parolee, and is entitled to a higher degree of protection." *Winship* was then cited as establishing the burden of proof in juvenile cases as beyond a reasonable doubt.

This footnote makes clear the court's later explicit ruling in *Gagnon* that counsel is not required as a matter of right compelled by due process in all probation or parole revocation hearings, as contrasted to being required in all criminal prosecution and juvenile proceedings where the defendant's freedom may be taken. *Gagnon* does affirm that due process considerations can, however, compel the state to furnish counsel where the defendant denies commission of

the act or where counsel's special skills are needed in other ways. *Winship* is consistent with this approach. Proof beyond a reasonable doubt is required, as a matter of due process, at the point where specific allegations are made regarding the commission of criminal acts which are contested and are the sole basis for revocation of parole.

It would seem to me that all of the policy reasons stated by the court establishing the importance of applying the beyond a reasonable doubt standard in *Winship* apply in this case. As previously stated in *Morrissey* and *Gagnon,* due process does apply to probation and parole revocation proceedings despite the fact that the defendant is not an "accused" person as in original criminal proceedings. Due process is based upon a concept of fundamental fairness and where the court in *Winship* has specifically identified the proof beyond a reasonable doubt standard as basic to a concept of fundamental fairness, the reasons for its application appear even more cogent. The cases cited by the majority on the burden of proof issue are not persuasive. They either predate *Winship* or fail to discuss it.

Where the sole reason advocated for petitioner's violation of his parole is the commission of criminal acts upon which he has been adjudged not guilty by application of the beyond a reasonable doubt standard in the superior court of this state, to subsequently remove petitioner's freedom by the application of a lesser standard seems to me to completely ignore the unusually strong language used in *Winship*, asserting the importance of this fundamental right.

I would, therefore, grant the writ.

Petition for rehearing denied March 29, 1974.