[No. 82476-2.   En Banc.]
Argued January 28, 2010.     Decided September 30, 2010.

THE CITY OF ABERDEEN, *Respondent*, v. FRANCIS JAMES REGAN, *Petitioner*.

*Eric J. Nielsen* and *David B. Koch* (of *Nielsen Broman & Koch PLLC*), for petitioner.

*Eric S. Nelson, City Attorney*, for respondent.

¶1 FAIRHURST, J. — Francis James Regan challenges the revocation of the suspension of his sentence after he was accused, but found not guilty, of fourth degree assault and criminal trespass. Regan's probation was conditioned on having "[n]o criminal <u>violations of law</u> or alcohol related infractions." Clerk's Papers (CP) at 62. He argues that "criminal violations of law" requires a conviction or proof beyond a reasonable doubt that he committed a crime. He asserts that because he was found not guilty of the crimes at trial, the court should have been collaterally estopped from finding he violated his probation condition. Regan

additionally argues that even if such a result is not commanded by the plain language of his probation condition, the rule of lenity should apply to interpreting conditions of probation. Because we hold that Regan's probation condition is unambiguous, we do not reach the lenity issue.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 Regan was convicted of fourth degree assault in Aberdeen Municipal Court and sentenced to 365 days in jail. The court suspended 360 days of Regan's sentence and placed him on probation for 24 months. The court conditioned Regan's probation on his having "[n]o criminal violations of law or alcohol related infractions." *Id.*

¶3 While on probation, Regan was charged with fourth degree assault and criminal trespass. Regan was acquitted at a trial. However, the city moved to revoke the suspension of his sentence, asserting that he violated the condition of his probation. Regan argued that the municipal court was collaterally estopped from finding he violated his probation condition in light of the not guilty verdict at trial. The municipal court disagreed and revoked five days of the suspension of Regan's sentence based on the criminal trespass charge.

¶4 Regan appealed the decision to the Grays Harbor County Superior Court, which reversed the municipal court. The superior court based its decision on the wording of the judgment and sentence and concluded that the word "criminal" was an adjective that modified "violations," thereby imposing a reasonable doubt burden of proof.[1] CP at 55. Because the court concluded that criminal violations of law had to be found beyond a reasonable doubt, the court

---

[1] The superior court did not possess a copy of the judgment and sentence but inferred its contents from other "materials presented." CP at 55. The superior court determined that the condition read as "no criminal violations of the law," but it actually read as "[n]o criminal violations of law or alcohol related infractions." CP at 55, 62. The Court of Appeals opinion uses the superior court's language. *City of Aberdeen v. Regan*, 147 Wn. App. 538, 540-42, 195 P.3d 1015 (2008).

determined that Regan's acquittals barred revocation of his suspended sentence.

¶5 The Court of Appeals granted the city's motion for discretionary review and reversed the superior court. *City of Aberdeen v. Regan*, 147 Wn. App. 538, 541, 543, 195 P.3d 1015 (2008). The Court of Appeals held that the municipal court could have revoked the suspension if it were reasonably satisfied that Regan violated his probation condition. *Id.* at 542-43. It determined that the rule of lenity did not apply because trial courts have broad discretion in determining the conditions of probation and whether those conditions have been violated. *Id.* at 541 n.1. We granted Regan's petition for review. *City of Aberdeen v. Regan*, 166 Wn.2d 1009, 208 P.3d 1125 (2009).

## II. ISSUE

¶6 When a sentence is suspended on the condition that a defendant engage in "[n]o criminal violations of law or alcohol related infractions," is a court required to find beyond a reasonable doubt that the defendant has committed a crime or find that the defendant has been convicted of a crime before the court may revoke the suspension?

## III. ARGUMENT

¶7 Regan argues that the specific wording of his probation condition precludes a court from revoking the suspension of his sentence unless that court finds beyond a reasonable doubt that he violated criminal law or that he has been convicted of a crime. The city asserts that a court need merely be reasonably satisfied that Regan has violated the criminal law in order to revoke the suspension. "We review questions of law de novo." *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 667, 211 P.3d 1023 (2009).

¶8 Municipal courts are empowered to defer or suspend execution of sentences and impose up to two years of probation. RCW 3.50.330. Courts may impose conditions

on probation and may revoke a deferral or suspension upon violation of those conditions. RCW 3.50.330-.340. " 'The granting of a deferred sentence and probation, following a plea or verdict of guilty, is a rehabilitative measure, and as such is not a "matter of right but is a matter of grace, privilege, or clemency granted to the deserving." ' " *State v. Kuhn*, 81 Wn.2d 648, 650, 503 P.2d 1061 (1972) (quoting *State v. Shannon*, 60 Wn.2d 883, 888, 376 P.2d 646 (1962), *overruled on other grounds by Mempa v. Rhay*, 68 Wn.2d 882, 416 P.2d 104 (1966), *rev'd*, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967) (quoting *State v. Farmer*, 39 Wn.2d 675, 679, 237 P.2d 734 (1951))). The decision to grant probation or revoke a suspended sentence is within the sound discretion of the trial court. *Id.* In order to revoke probation, " '[a]ll that is required is that the evidence and facts be such as to reasonably satisfy the court that the probationer has breached a condition under which he was granted probation.' " *Standlee v. Smith*, 83 Wn.2d 405, 409, 518 P.2d 721 (1974) (quoting *Kuhn*, 81 Wn.2d at 650).

¶9 Collateral estoppel works to prevent relitigation of issues that were resolved in a prior proceeding. *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 792, 193 P.3d 1077 (2008). Collateral estoppel requires

> "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

*Id.* (internal quotation marks omitted) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)). " '[T]he issue to be precluded must have been actually litigated and necessarily determined in the prior action.' " *Id.* (quoting *Shoemaker*, 109 Wn.2d at 508).

¶10 We have already rejected the notion that acquittal on criminal charges collaterally estops a court from revoking parole for the same conduct. In *Standlee*, Daryl

Standlee was on parole when he was charged with two counts of second degree assault. 83 Wn.2d at 406. A revocation hearing was held before a hearing officer to determine whether Standlee's parole should be revoked. *Id.* However, the hearing officer stayed revocation until after trial on the assault charges. *Id.* at 406-07. At a nonjury trial, Standlee was acquitted of the two assault charges. *Id.* at 407. Despite the acquittal at trial, the hearing officer concluded that Standlee committed the assaults and revoked his parole.[2] *Id.* Standlee challenged the revocation, arguing that the hearing officer should have been collaterally estopped from finding that he committed the assaults. *Id.* We disagreed and explained that while the finder of fact at trial had to find beyond a reasonable doubt that Standlee had committed assault in order to render a guilty verdict, the hearing officer had to merely be reasonably satisfied that Standlee committed the assault in order to revoke his parole. *Id.* at 408-09. Because the burdens of proof differed, collateral estoppel did not apply. *Id.* at 409.

¶11 Regan does not argue that collateral estoppel applies any differently in the probation context than it does in the parole context. Instead, he argues that the specific wording of the probation condition in this case should have precluded the trial court from revoking probation unless that court found that Regan had been convicted of a crime or found beyond a reasonable doubt that Regan had committed a crime. Therefore, the disposition of this case turns on the meaning of "[n]o criminal <u>violations of law</u> or alcohol related infractions." CP at 62.

¶12 A look to the plain language of Regan's probation condition reveals that it prohibited him from engaging in conduct that is proscribed by the criminal law. A "violation" is defined as "the act or action of violating or quality or state of being violated." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2554 (2002). "[V]iolate" means "to fail to keep : BREAK,

---

[2] Standlee's parole conditions are not provided in the *Standlee* opinion. *See Standlee*, 83 Wn.2d at 406-14.

disregard." *Id.* Therefore, a violation of law is the act of failing to keep the law or the state of the law having been broken or disregarded. In no way do the definitions of "violate" or "violation" imply a proof or procedural requirement. In contrast, the legislature has defined " '[c]onviction' " to mean "an *adjudication* of guilt pursuant to Title 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." RCW 9.94A.030(9) (emphasis added). In short, when a person is ordered to not violate the law, he or she should plainly understand that he or she is forbidden from engaging in conduct proscribed by the law.

¶13 Regan asserts that the language "violations of law" requires that the probationer actually be convicted before the probation condition is violated. For this contention, Regan relies on *Pattison v. Department of Licensing*, 112 Wn. App. 670, 50 P.3d 295 (2002). *Pattison* involved three consolidated cases where drivers had been arrested for suspicion of driving under the influence. *Id.* at 673. In each case, the arresting officer read the implied consent warning contained in the Washington State Patrol's warning form. *Id.* The warning advised the drivers that they could refuse a breath test but that such a refusal would result in the revocation of their licenses. *Id.* at 675. It also warned that " 'your license, permit, or privilege to drive will be suspended, revoked, or denied . . . if you are in violation of RCW 46.61.502, 46.61.503 or 46.61.504.' " *Id.* (quoting Washington State Patrol implied consent warning form). The drivers challenged the accuracy of the warning by arguing that the "in violation of" language could mislead a driver into thinking that "losing one's license is an inevitable consequence of merely being arrested." *Id.* at 676. The Court of Appeals rejected this argument and stated that "[t]he more reasonable understanding of the warning, *in context*, is that the phrase 'if you are in violation of' means 'if you are prosecuted and convicted for.' " *Id.* (emphasis added). Regan asserts that because "in violation of" means "prosecuted and convicted for," then "no criminal violations of law" must be interpreted

to preclude a court from revoking the suspension of his sentence without first finding that he was convicted of a crime. However, the Court of Appeals in *Pattison* was clear that it equated violation with conviction only "in context." *Id.* The context in *Pattison* is quite different from the context of this case.

¶14 There is a distinction between determining that conduct is proscribed by the criminal law and proving that the conduct has actually occurred. For example, it is generally illegal for a person to possess a controlled substance. RCW 69.50.401. If the State cannot prove that a person possessed a controlled substance, it does not render such possession legal. However, if the State cannot prove the possession, then it cannot punish the possession. In *Pattison*, the officers warned the drivers about the *punishment* for violating the criminal law. Because the State may not punish a violation of criminal law without a conviction, the context necessarily implied that a conviction was required.

¶15 In contrast, the context in this case is the revocation of the suspension of a sentence. We have already recognized that "revocation is not punishment for the subsequent events which violate the parole and which may also constitute a separate crime." *Standlee*, 83 Wn.2d at 407 (citing *People v. Morgan*, 55 Ill. App. 2d 157, 204 N.E.2d 314 (1965)). A suspension may be revoked where a court is reasonably satisfied that a probationer has violated a condition of his or her probation. *Id.* at 409. Therefore, when a court conditions the suspension of a sentence on a probationer not violating the law, the context does not imply that a conviction is required.

¶16 Regan makes a separate argument that we should adopt the superior court's conclusion that the trial court could not revoke probation unless it found beyond a reasonable doubt that Regan had committed a crime. The superior court's interpretation turns on the presence of the word "criminal." CP at 55. The superior court stated that if the probation condition had merely read "no law violations," the

trial court would have had to merely be only reasonably satisfied that Regan had committed a crime before it could revoke the suspension of his sentence. *Id.* However, the superior court concluded that because the condition barred *criminal* law violations, the trial court could revoke the suspension of Regan's sentence only if it found beyond a reasonable doubt that Regan had committed a crime.

¶17 "[C]riminal" is defined as "1 : involving or being a crime <~ carelessness> 2 : relating to crime or its punishment <a ~ action> — distinguished from *civil* . . . ." WEBSTER'S, *supra*, at 536. The definition of "criminal" makes no reference to proving or adjudging. *Id.* Instead, it speaks to "being a crime" or distinguishing criminal things from civil things. *Id.* Thus, it is much more reasonable to conclude that "criminal" modifies "violations" by restricting what *types* of violations trigger revocation than what proof is necessary to establish the existence of criminal conduct.[3]

¶18 This interpretation also makes greater sense in the probation revocation context. If the condition had read "no violations of law," then speeding or jaywalking may have been sufficient justifications for revoking probation. By adding the word "criminal," the condition is limited to violations of criminal law. This interpretation is reinforced by the full text of the probation condition. The full text of the probation condition, which the superior court did not possess, reads, "No criminal <u>violations of law</u> or alcohol related infractions." CP at 62. The full text reveals that the word "criminal" stands in contrast to civil "infractions" and that the condition is meant to trigger revocation upon the commission of any crime or any civil infraction relating to alcohol.

¶19 Because the plain language of "violations of law" means engaging in conduct that is prohibited by the law,

---

[3] Additionally, a probation condition should not be able to modify the burden of proof at a revocation hearing. The burden of proof is part of *how* a court determines whether a condition has been violated. A probation condition is *what* a probationer is or is not supposed to do. When a court declares what a probationer should or should not do, it is not modifying how it determines whether the probationer has done it.

and because the word "criminal" merely restricts what type of legal violation triggers the condition, we hold that the condition "no criminal <u>violations of law</u>" plainly restricted Regan from engaging in conduct prohibited by criminal law. *Id.* The burden in probation revocation hearings is reasonable satisfaction. Because the trial court was reasonably satisfied that Regan had committed criminal trespass, the trial court was empowered to revoke the suspension of Regan's sentence. Accordingly, we affirm the Court of Appeals.

## IV. CONCLUSION

¶20 We conclude that a probation condition that reads "[n]o criminal <u>violations of law</u>" unambiguously restricts a probationer from engaging in conduct that is proscribed by the criminal law. *Id.* Because the trial court was reasonably satisfied that Regan had committed a crime despite Regan's acquittal at trial, the trial court was authorized to revoke the suspension of Regan's sentence. We affirm the Court of Appeals.

MADSEN, C.J., and C. JOHNSON, OWENS, and STEPHENS, JJ., concur.

¶21 ALEXANDER, J. (concurring in result) — I concur in the result the majority reaches. I do so, however, reluctantly. My aversion to the result stems from my view that it is somewhat unfair for a city to seek revocation of Francis Regan's probation for noncompliance with a condition that he have "[n]o criminal *violations of law*" when Regan was acquitted in that same court of criminal charges that arose from facts identical to those that led to revocation of his probation. Clerk's Papers at 62. Case law from this court, though, supports the proposition that a city is not estopped from taking the action that the city of Aberdeen did here.

*Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974).[4] I am, of course, obliged to follow that decision. Should, however, the continued viability of *Standlee* be directly presented to this court during my tenure on it, I believe that I would be inclined to advance the position admirably stated by former Justice Robert Utter in his dissent in *Standlee*, to wit:

> Where the sole reason advocated for petitioner's violation of his parole is the commission of criminal acts upon which he has been adjudged not guilty by application of the beyond a reasonable doubt standard in the superior court of this state, to subsequently remove petitioner's freedom by the application of a lesser standard seems to me to completely ignore the unusually strong language used in [*In re*] *Winship*, [397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970),] asserting the importance of [the] fundamental right [to due process].

*Id.* at 414 (Utter, J., dissenting).

CHAMBERS and J.M. JOHNSON, JJ., concur with ALEXANDER, J.

¶22 SANDERS, J. (dissenting) — Francis James Regan was charged with fourth degree assault and criminal trespass. A jury acquitted him of both charges.

¶23 At that time, Regan was on probation for a previous conviction. A condition of Regan's probation required that he commit "[n]o criminal violations of law . . . ." Clerk's Papers (CP) at 62. Despite his acquittal, the city of Aberdeen argued that Regan violated his probation by committing fourth degree assault and criminal trespass. The municipal court held Regan was guilty of a criminal trespass *by preponderance of the evidence* notwithstanding the acquittal.[5] Regan was sentenced to five days' incarceration.

---

[4] Although *Standlee* involved revocation of parole rather than probation, Regan does not argue that *Standlee* applies differently in the probation violation context than it does in a parole violation context.

[5] The municipal court did not expressly identify the standard it applied, but stated, "Even though he was acquitted at trial, certainly enough evidence was

¶24 The dispute on this appeal is the meaning of "[n]o criminal <u>violations of law.</u>" *Id.* Regan argues the use of "criminal" in the phrase means the city has to prove he committed *a crime*—i.e., that Regan was guilty *beyond a reasonable doubt.* However, the majority instead holds "criminal" merely denotes the violation of a *criminal* law, and thus it is not problematic that Regan was actually acquitted.

## I. "No criminal <u>violations of law</u>"

¶25 Regan's interpretation, which was also adopted by the superior court, conforms to the language of the probation condition. Regan reasons, without "criminal," a "violation of law" could refer to any act by which a defendant *actually* transgresses the law. This interpretation provides no evidentiary standard. But adding the modifier, a *"criminal* violation of law," requires that the violation be a crime. And to be guilty of a crime, one must be convicted through the production of evidence sufficient to demonstrate guilt *beyond a reasonable doubt.* Thus, "criminal" requires a beyond-a-reasonable-doubt burden of proof and the court cannot apply a lesser burden.

¶26 The majority disagrees, deconstructing the phrase, word by word, to finally conclude "criminal <u>violations of law</u>" does not refer to any specific burden of proof, but only to whether Regan *actually* committed acts that, if proved by a preponderance, would violate criminal law. Majority at 109-13.

¶27 However, this reasoning ignores the very language of the condition. The majority's use of "criminal" in the phrase merely denotes that "the condition is limited to violations of *criminal law.*" *Id.* at 112 (emphasis added). For the majority's analysis to be accurate, the phrasing would have to read "no violations of criminal law," not "no criminal <u>violations of law.</u>"

---

produced for this Court to find that he violated his probation." CP at 35. However, at a previous hearing on August 17, 2006, the court stated that probation was violated if the violation was "more likely than not," a common articulation of the preponderance of the evidence standard. CP at 30.

¶28 Here the adjective "criminal" does not modify "law," but rather "violations" or "violations of law." The phrase "violations of law" is underlined on the probation form, indicating that phrase is one unit and "criminal" modifies that *unit*. *See* CP at 62 ("[n]o criminal violations of law"). Again, a *criminal* violation of law requires that the violation be a crime and a crime requires proof beyond a reasonable doubt. CP at 58.

II. Rule of lenity

¶29 Having reviewed the language of the probation condition, the arguments of the parties, and the five pages it took the majority to explain the "clear" meaning of "criminal violations of law" (majority at 109-13), I believe it is obvious that the inarticulate language used in Regan's probation condition is at least ambiguous.

¶30 Since the language of Regan's probation condition is ambiguous, we must construe it in his favor. " 'Where two possible constructions are permissible, the rule of lenity requires us to construe the statute strictly against the State in favor of the accused.' " *Staats v. Brown*, 139 Wn.2d 757, 769, 991 P.2d 615 (2000) (quoting *State v. Gore*, 101 Wn.2d 481, 485-86, 681 P.2d 227 (1984)). The result is no different here where Regan is bound by a probation condition rather than a statute. The rule of lenity applies with no less force: "[T]he citizen is entitled to fair notice of what sort of conduct may give rise to punishment." *McNally v. United States*, 483 U.S. 350, 375, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987). As the superior court adeptly reasoned, "[A] person with a suspended sentence should be able to clearly understand the conditions and terms of the judgment and sentence." CP at 55.

¶31 The Court of Appeals conceded the language of the probation condition "might be ambiguous" but neglected to apply the rule of lenity because "the trial court has broad discretion in determining the conditions and whether the probationer violated them." *City of Aberdeen v. Regan*, 147 Wn. App. 538, 541 n.1, 195 P.3d 1015 (2008). I certainly

disagree. Discretion is exercised when the condition is originally imposed. There is no discretion to modify or create a new condition to be applied retroactively. Furthermore, this discretion does not trump the probationer's due process right to notice of the conditions of his or her probation prior to the revocation hearing. *In re Pers. Restraint of Blackburn*, 168 Wn.2d 881, 883, 232 P.3d 1091 (2010).

III. Conclusion

¶32 The language "[n]o criminal <u>violations of law</u>" can be interpreted to require a criminal conviction on proof beyond a reasonable doubt and certainly to exclude an acquittal. At worst, the language is ambiguous. A probationer is entitled to fair notice of the conduct that will result in revocation of his or her probation. An ambiguity must be resolved in favor of the defendant. Regan's acquittal from the criminal allegations precluded the court from revoking his probation.

¶33 I dissent.