# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| COOKE AQUACULTURE PACIFIC, LLC, | No. 58229-5-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES, and HILARY FRANZ, the Washington Commissioner of Public Lands, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, J. – Cooke Aquaculture Pacific, LLC (Cooke) appeals the trial court's order granting summary judgment in favor of the Department of Natural Resources (DNR).[1] Cooke leased public lands from DNR for finfish aquaculture. After one of Cooke's aquaculture farms collapsed, DNR closely scrutinized the structural integrity of Cooke's other farms. After investigating Cooke's farm at Port Angeles, DNR concluded that Cooke was in default of the lease and terminated it without giving Cooke a chance to cure its defaults.

Cooke appealed DNR's termination of the lease, filing an administrative appeal under RCW 79.02.030 and a complaint seeking a declaratory judgment that DNR had no basis for terminating the lease and alleging that DNR breached its duty of good faith and fair dealing. The trial court bifurcated the claims, hearing the administrative appeal first. The court affirmed DNR's termination of the lease. This court affirmed on appeal. DNR moved to dismiss Cooke's

---

[1] The respondents are the Commissioner of Public Lands, Hilary Franz (in her official capacity) and the DNR. Because Cooke's allegations relate primarily to DNR's decision regarding its lease, we refer to respondents collectively as "DNR" except where indicated otherwise.

remaining claims, arguing that Cooke was collaterally estopped from relitigating the controlling issue of whether DNR's termination of the lease violated the terms of the lease. The trial court dismissed Cooke's claims on collateral estoppel grounds.

We hold that (1) the trial court did not err in applying collateral estoppel to Cooke's claim that DNR had no basis for terminating the lease because this court ruled as a matter of law on de novo review that Cooke defaulted on the lease and DNR had the right to terminate the lease, (2) the trial court erred in applying collateral estoppel to Cooke's good faith and fair dealing claim because that claim is not identical to its claim in the administrative appeal, and (3) the trial court erred in applying collateral estoppel to Cooke's breach of contract claim because neither the trial court nor this court addressed that claim in the administrative appeal.

Accordingly, we affirm in part and reverse in part the trial court's order dismissing Cooke's claims and remand for further proceedings.

FACTS

Since 1984, several different private companies have leased the aquatic lands in Port Angeles harbor from DNR for finfish aquaculture. Cooke is the most recent tenant, and negotiated its most recent lease with DNR in October 2015. The lease term was for 10 years, set to expire in September 2025.

*Lease Provisions*

Relevant to the instant appeal are several provisions of Cooke's lease. The lease provided that Cooke was to pay annual rent to DNR, and that failure to pay timely rent would be considered a default by Cooke.

The lease also provided that Cooke was to keep and maintain the property and improvements "in good order and repair, in a clean, attractive, and safe condition." Clerk's

Papers (CP) at 306. The lease defined "improvements" as "additions within, upon, or attached to the land," including, but not limited to, "fill, structures, bulkheads, docks, pilings, and other fixtures." CP at 290. The lease further provided that, as of the start of the lease, a number of improvements were located on the property, including 38 anchors.

Exhibit B to the lease set forth additional requirements. It provided that Cooke was to "replace existing unencapsulated flotation materials with encapsulated flotation materials . . . on the wooden float by December 1, 2015" and "must replace all unencapsulated flotation material on the concrete float by December 1, 2016." CP at 316. It further required Cooke to "replace existing tires with inert or encapsulated materials such as plastic or enclosed foam . . . by December 1, 2015." CP at 316. In addition, the lease required Cooke to ensure that all improvements were located on the property by October 1, 2016.

Finally, the lease stated that the "State may elect to deem a default by [Cooke] as an Event of Default if the default occurs within six (6) months after a default by [Cooke] for which State has provided notice and opportunity to cure and regardless of whether the first and subsequent defaults are of the same nature." CP at 308. Upon an Event of Default, the State could terminate the lease and remove Cooke. There was no provision for an opportunity to cure for an Event of Default.

*DNR Terminates Lease*

In August 2017, the net pen at Cooke's Cypress Island farm collapsed. After the collapse, DNR began to review the structural integrity of Cooke's other farms.

In October, Cooke failed to timely pay rent for the Port Angeles harbor farm. DNR sent Cooke a notice of default and granted it a 60-day period to cure. Cooke cured the default five days later.

In November, DNR hired an engineering company to inspect Cooke's net pen locations at the Port Angeles harbor farm. The engineering company documented several issues. It noted that although Cooke's anchor lines were in satisfactory to fair condition, there were errant abandoned anchor line ropes. In addition, some of the flotation devices were unencapsulated, meaning that there was exposed styrofoam in the farm. The engineering company also found that the inspections conducted by Cooke were not done in accordance with manufacturing recommendations or industry standards. Finally, some of Cooke's anchors likely were outside of the limits of the leased area.

In its final report, the engineering company concluded that there were issues with anchors on the property that needed immediate attention because there was a broken link in the chain near the anchor. The report also noted that "mooring lines were 'missing' and were 'wrapped around other lines,' among additional problems." CP at 250.

Based on the results of the engineering company's investigation, DNR determined that Cooke had defaulted on three lease requirements. First, the lease required Cooke to replace all unencapsulated floatation material on the concrete float by December 1, 2016. However, as of December 9, 2017, the styrofoam floatation material on the concrete float was unencapsulated.

Second, the lease required that Cooke ensure all improvements be located on the property by October 1, 2016. However, as of December 9, 2017, anchors associated with the net pens were located outside of the leasehold. And the lease defines anchors as "existing improvements." CP at 290.

Third, the lease required Cooke to keep the leasehold and all improvements "in good order and repair, in a clean, attractive, and safe condition." CP at 306. However, "as of

December 9, 2017, two net pen anchor chains were disconnected from their anchors, and a third anchor chain had an open link that is vulnerable to complete failure." CP at 250.

DNR sent a notice of default and lease termination to Cooke on December 15, 2017. In the notice, DNR stated that it was terminating the lease as a result of an Event of Default because Cooke previously had defaulted by paying untimely rent within a six-month period of the three other defaults mentioned above. DNR did not give Cooke an opportunity to cure its defaults.

*Administrative Appeal*

In January 2018, Cooke filed an appeal under RCW 79.02.030, which gives a person a right to appeal a decision regarding a DNR lease. Cooke also asserted a complaint for declaratory judgment that DNR had no basis for terminating the lease and alleging that DNR breached its duty of good faith and fair dealing.

The trial court severed the civil complaint from the administrative appeal and ordered Cooke to refile its civil complaint under a new cause number. The court ruled that the administrative appeal would be heard first and the civil complaint would be heard second. Cooke subsequently filed a new civil complaint, in which Cooke again sought a declaratory judgment that DNR has no basis for terminating the lease and alleged that DNR breached its duty of good faith and fair dealing.[2]

In February 2020, the trial court affirmed DNR's lease termination under RCW 79.02.030. The trial court ruled that the case was an administrative law case and applied the arbitrary and capricious standard of review. The court stated, "Although it appears that DNR

---

[2] Cooke also asserted two constitutional claims, arguing that DNR violated Cooke's procedural and substantive due process rights and requesting damages under 42 U.S.C. § 1983. The trial court dismissed those claims on different grounds, and Cooke does not challenge that ruling on appeal.

may have been enforcing what could be described as technical violations after a high-profile event, under the arbitrary and capricious standard, the court finds there is a basis in the record to support the termination decision." CP at 441. The court continued, "In reaching this decision, the Court is making no findings of fact, but rather is simply reviewing the certified DNR record and applying the arbitrary and capricious standard to that record." CP at 442.

*Amended Civil Complaint*

Following the trial court's decision in the administrative appeal, Cooke filed an amended complaint in the civil action. The amended complaint contained a new allegation that DNR and Cooke had entered into a Consent to Assignment of Lease for Security Purposes with Cooke's lender. Cooke alleged that the consent to assignment stated,

> State will send to Lender a copy of any notices of default or termination it issues to Tenant under the Lease. Failure to provide notices to Lender shall not relieve Tenant of its obligations under the Lease nor extend the time in which Tenant has the right to cure the default. State grants to Lender the same time to cure any default as is provided to Tenant under the Lease (or as provided in the notice of default issued by State if such time to cure is not specified in the Lease) before such default becomes an Event of Default (as defined in the Lease); provided that Lender shall have the right, but not the obligation, to cure such default. Lender's time to cure shall commence upon State's provision of notice of the default to Lender. State shall not terminate the Lease under Section 14 of the Lease or pursue any other right or remedy under the Lease by reason of any default of Tenant under Section 14 of the Lease unless Lender has received from State a notice of default and until lender's time period to cure such default has expired. Failure by State to send a notice of termination shall not affect the effective date of any notice of termination.

CP at 135.

Cooke alleged that although DNR gave the lender notice of the payment of rent default, DNR terminated the lease without giving the lender a notice of the other defaults. Cooke asserted a new cause of action for breach of contract, claiming that DNR breached its obligations to the lender under the consent to assignment by failing to provide notice of default and an opportunity to cure.

6

No. 58229-5-II

*Court of Appeals Decision*

Cooke appealed the trial court's RCW 79.02.030 order to this court. In December 2021, this court affirmed the trial court's order in an unpublished opinion. *See Cooke Aquaculture Pac., LLC v. Dep't of Nat. Res.*, No. 54564-1-II (Wash. Ct. App. Dec. 14, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054564-1-II%20Unpublished%20Opinion.pdf. This court held that DNR's right to terminate the lease was a quasi-judicial action subject to de novo review. *Id.* at *10. However, DNR's decision to terminate the lease was administrative in nature subject to the arbitrary and capricious standard of review. *Id.* at *11.

Applying de novo review and a substantial evidence standard, the court held that DNR had the *right* to terminate the lease under the lease provisions. *Id.* at *14. The court noted that Cooke had defaulted on the lease by failing to pay rent on time and concluded that additional defaults occurred within six months of the first default. *Id.* at *11. Therefore, DNR was entitled to declare an Event of Default, which allowed DNR to terminate the lease without providing an opportunity to cure. *Id.* at *14.

Regarding the *decision* to terminate the lease, the court held that DNR's action was not arbitrary and capricious. *Id.* The court concluded, "DNR's decision to terminate the lease was based on facts supported by substantial evidence, pursuant to plain terms of the contract, was well reasoned and made with due regard to the facts and circumstances." *Id.* at *15.

In a footnote, the court addressed Cooke's claim that DNR violated the duty of good faith and fair dealing. *Id.* at *14 n.4. The court stated, "[T]hese arguments are waiver arguments by another name, and Cooke did not assign error to the superior court's determination that waiver did not apply. Accordingly, we do not reach these arguments." *Id.*

7

Cooke filed a motion for reconsideration to this court, which this court denied in March 2022. Cooke then filed a petition for review by the Supreme Court, which was denied.

*Dismissal of Cooke's Civil Claims*

DNR moved for summary judgment in Cooke's civil lawsuit, arguing that collateral estoppel barred the relitigation of the controlling issue behind all of Cooke's claims: whether DNR properly terminated Cooke's lease. Specifically, DNR argued that because DNR's termination of Cooke's lease was upheld in the administrative appeal under RCW 79.02.030, Cooke's remaining claims should be dismissed under collateral estoppel because they all hinged on whether or not the lease termination was proper.

DNR pointed out that Cooke's declaratory judgment claim seeking a declaration that it is not in default of the lease was the same argument that Cooke made in the administrative appeal when it asserted that it did not breach the lease. DNR also argued that Cooke's claim asserting violations of the duties of good faith and fair dealing should be dismissed because this court had already addressed this argument, concluding that Cooke had repackaged its waiver arguments that were rejected by the trial court. Finally, DNR argued that Cooke's new claim about whether DNR gave sufficient notice of the lease termination to its lender should be dismissed because this court already had considered and rejected the question of whether Cooke had a right to cure.

In response, Cooke argued that the trial court should not apply collateral estoppel to dismiss their claims. Cooke pointed out that the issues in the civil case were not identical to those raised in the administrative appeal because different legal standards applied to their civil claims. Cooke also argued that collateral estoppel should not apply because doing so would work an injustice against Cooke since they did not have the opportunity to fully and fairly litigate their claims.

8

The trial court granted DNR's motion for summary judgment. The court held that collateral estoppel applied to Cooke's claims for declaratory judgment, breach of the duty of good faith and fair dealing, and breach of contract for failure to give timely notice to Cooke's lender. The court dismissed each of the claims. The court explained,

> While the court recognizes that the standards between an administrative appeal and the present matter are different, the Court concludes that this does not prevent the application of collateral estoppel in this case. The Court does not believe that it works an injustice against Cooke to grant Defendants' Motion for Summary Judgment.

CP at 2504.

Cooke appeals the trial court's order dismissing their claims on collateral estoppel grounds.

ANALYSIS

Cooke argues that the trial court erred by granting summary judgment in favor of DNR because collateral estoppel does not apply to their claims. Cooke emphasizes that the standard of review was different in the administrative appeal than it would be in a civil action. We agree in part and disagree in part.

A.    SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences from the evidence. *Id*. Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id*. A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id*. But summary judgment can be determined as a

matter of law if the material facts are not in dispute. *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 325, 519 P.3d 953 (2022).

B.     COLLATERAL ESTOPPEL

Collateral estoppel is an equitable doctrine that prevents the relitigation of issues that already have been determined in a prior proceeding. *Weaver v. City of Everett*, 194 Wn.2d 464, 473, 450 P.3d 177 (2019).

Collateral estoppel applies when (1) the issue decided in the prior action is identical with the one presented in the current action, (2) the prior action ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior action, and (4) the application of collateral estoppel will not cause an injustice against the estopped party. *Id* at 474. In addition, "[c]ollateral estoppel precludes only those issues that were actually litigated and necessary to the final determination in the earlier proceeding." *Schibel v. Eymann*, 189 Wn.2d 93, 99, 399 P.3d 1129 (2017). Whether collateral estoppel applies is a question we review de novo. *Weaver*, 194 Wn.2d at 473.

Regarding the first requirement, collateral estoppel can be applied only in situations where "the issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceeding" and where "[t]he controlling facts and applicable legal rules . . . remain unchanged." *Reeves v. Mason County*, 22 Wn. App. 2d 99, 111-12, 509 P.3d 859 (2022); *see also Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974). Collateral estoppel is only appropriate if the issue raised in the second case " 'involves substantially the same bundle of legal principles that contributed to the rendering of the first judgment,' " even if the facts and issues in the cases are identical. *Standlee*, 83 Wn.2d at 408 (internal quotation marks omitted) (quoting *Neaderland v. Comm'r of Internal Revenue*, 424 F.2d 639, 642 (2d Cir. 1970)).

The Supreme Court in *Standlee* recognized the rule that "a difference in the degree of the burden of proof in the two proceedings precludes application of collateral estoppel." 83 Wn.2d at 407. For instance, "[w]hen a jury acquits, it decides only that an accused is not proven guilty of the offense charged beyond a reasonable doubt, and the [subsequent action] is not foreclosed thereby from attempting to show fraud in the civil counterpart against the same defendant by a fair preponderance of the evidence." *Id.* at 408.

C.      CLAIM REGARDING DNR'S RIGHT TO TERMINATE

Cooke argues that collateral estoppel does not apply to its claim that it was not in default under the lease and that DNR had no basis for terminating the lease. We disagree.

Cooke's declaratory judgment claim in part requests the following relief: "Cooke is entitled to a declaratory judgment that it is not in default of the Lease, that DNR has no right to declare a default, Event of Default, or to terminate the Lease, and that the Lease remains in full force and effect." CP at 141.

In the previous appeal, this court ruled against Cooke on all of these issues. The court concluded that substantial evidence supported a finding that additional lease defaults occurred after Cooke failed to pay rent on time. *Cooke Aquiculture Pac.*, slip op. at *11. And the court concluded that DNR had a right under the lease to declare an event of default without an opportunity to cure. *Id.* at *14. Therefore, the court held that DNR had the right to terminate the lease. *Id.*

Cooke focuses on the different standards of review between an administrative appeal and a civil lawsuit. But the court's holding regarding the right of DNR to terminate the lease was based on a *de novo* review and an interpretation of the lease terms, and did not involve the arbitrary and capricious standard. *Id.* at *10, *11-13. That is the same process that the trial court

11

would apply to Cooke's declaratory judgment claim. Contract interpretation is a question of law. *Kaiser Found. Health Plan, Inc. v. Brice*, 22 Wn. App. 2d 227, 233, 510 P.3d 1017 (2022).

Cooke argued at oral argument that this court applied a substantial evidence standard to determine that a lease had occurred, and that it did not have an opportunity in the administrative appeal to challenge the factual basis of the default finding. But this court did address the factual issues on the merits, and the substantial evidence standard is similar to the preponderance of the evidence standard that would be applied in Cooke's civil lawsuit.

We hold that collateral estoppel applies to Cooke's declaratory judgment claim.

D.     GOOD FAIR AND FAIR DEALING CLAIM

Cooke argues that collateral estoppel does not apply to its good faith and fair dealing claim. We agree.

The good faith and fair dealing claim focuses on DNR's decision to terminate the lease. Cooke argues that its duty of good faith and fair dealing claim was not identical to any claim decided in the administrative appeal. The duty of good faith and fair dealing involves whether the decision to terminate the contract was proper, not whether there was a right to terminate the contract. In the previous appeal, this court addressed the *decision* to terminate based on arbitrary and capricious standard of review. But in a trial of Cooke's breach of the duty of good faith and fair dealing claim, the standard of review will be a lower standard – preponderance of the evidence.

The Supreme Court in *Standlee* established a clear rule: "[A] difference in the degree of the burden of proof in the two proceedings precludes application of collateral estoppel." 83 Wn.2d at 407. That rule dictates that collateral estoppel cannot be applied to Cooke's breach of the duty of good faith and fair dealing claim. Because the burden of proof in the administrative

appeal was substantially higher than that in the instant case, we hold that the issues raised in the second case are not identical to those raised in the administrative appeal.

DNR argues that *Standlee* does not control because it addresses collateral estoppel in the context of a criminal prosecution and a subsequent parole revocation hearing, not two civil cases. In *Standlee*, a parolee was acquitted on criminal charges, and the Supreme Court held that collateral estoppel did not bar a subsequent parole revocation based on the same charges. 83 Wn.2d 405. But DNR cites no authority for the proposition that the rule expressed in *Standlee* is limited to the facts of that case.[3] And DNR fails to cite to any legal authority that stands for the proposition it asserts here: that collateral estoppel should apply to bar the litigation of an issue under a lower standard when the plaintiff failed to meet a higher burden of proof in the earlier action.

DNR also argues that it will prevail on the merits of the duty of good faith and fair dealing claim. But that claim is immaterial to whether collateral estoppel applies.

We hold that collateral estoppel does not apply to bar Cooke's breach of the duty of good faith and fair dealing claim. Therefore, the trial court erred in dismissing this claim based on collateral estoppel.

E.      BREACH OF CONTRACT CLAIM REGARDING COOKE'S LENDER

Cooke argues that collateral estoppel does not apply to its breach of contract claim regarding its lender asserted in its amended complaint. We agree.

Cooke emphasizes that neither the trial court nor this court on appeal addressed the breach of contract claim regarding Cooke's lender. As noted above, collateral estoppel only

---

[3] *Standlee* is cited in several civil cases. *E.g.*, *Reeves*, 22 Wn. App. 2d 99; *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 15, 408 P.3d 1123 (2017).

applies to an issue if that issue was actually litigated and necessarily decided in the previous action. *Schibel*, 189 Wn.2d at 99. The trial court could not have considered this issue because the lender breach of contract claim was asserted after the trial court ruled. And this court did not address DNR's obligations *to Cooke's lender* under the consent to assignment. This court addressed only DNR's obligations to Cooke. Whether the consent to assignment gave the lender greater cure rights was not actually litigated.

DNR argues that this court concluded on appeal that DNR did not have to give Cooke an opportunity to cure. Therefore, DNR claims that the lender had no opportunity to cure. However, this court addressed only Cooke's opportunity to cure, not the lender's opportunity to cure. DNR's argument may have merit. But the issue was not actually litigated in the appeal.

DNR also argues that Cooke's breach of contract claim fails because the consent to assignment expressly states that the failure to give notice to the lender does not affect the effective date of any notice of termination. Again, this argument may have merit. But the issue here is whether the breach of contract claim was actually decided in the appeal, not whether DNR can prevail at trial.

We hold that collateral estoppel does not apply to bar Cooke's breach of contract claim. Therefore, the trial court erred in dismissing this claim based on collateral estoppel.

CONCLUSION

We affirm in part and reverse in part the trial court's order dismissing Cooke's claims and remand the case for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

CHE, J.